UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
JOSE REYES,                                             :

                      Petitioner,          :          07 Civ. 2539 (LAP) (DF)

       -against-                             :          **REPORT AND
                                           RECOMMENDATION**

JAMES MORRISSEY, Superintendent,                       :
Butler Correctional Facility
                                 :
                    Respondent.
--------------------------------------------------------------X

**TO THE HONORABLE LORETTA A. PRESKA, U.S.D.J.:**

## INTRODUCTION

*Pro se* Petitioner Jose Reyes ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, following his state conviction, upon a jury verdict, of Criminal Sale of a Controlled Substance in the Third Degree, in violation of N.Y. Penal Law § 220.39(1). Petitioner was sentenced as a second felony offender to a prison term of five to ten years in prison for this offense.  At the he filed his habeas petition, he was incarcerated at the Butler Correctional Facility, although he has since been released to parole supervision.[1]

Petitioner challenges his conviction on the following grounds:  (1) that the introduction of evidence of an uncharged crime (a) during the grand jury proceedings and (b) at his trial allegedly violated his Fifth and 14th Amendment rights; (2) that his right to a fair trial was

--------

[1] The fact that Petitioner has been released on parole does not moot his habeas petition, as he remains subject to "collateral consequences" from his conviction.  *See Carafas v. LaVallee*, 391 U.S. 234, 237 (1968) (noting that, because of a resulting inability to vote, serve as a juror, or engage in certain businesses, a petitioner may have "a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him" (internal quotation marks omitted)); *see also Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998) (noting that collateral consequences of wrongful conviction are presumed to exist, even if "remote and unlikely to occur" (citing *Sibron v. New York*, 392 U.S. 40, 55-56 (1968))).

allegedly violated as a result of prosecutorial misconduct during summation; and (3) that his Sixth Amendment right to counsel was allegedly violated by the denial of effective assistance of appellate counsel.  (*See* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus, dated Jan. 30, 2007 ("Petition" or "Pet.").[2])  Respondent David Stallone,[3] the Superintendent of the Butler Correctional Facility ("Respondent") argues that Petitioner's claims should be dismissed as unexhausted, procedurally barred, and/or without merit.  (*See generally* Respondent's Memorandum of Law in Opposition to Petitioner for a Writ of Habeas Corpus, dated Nov. 30, 2007 ("Resp. Mem.") (Dkt. 9).)

For the reasons set forth below, I recommend that the Petition be dismissed in its entirety.

## BACKGROUND

### A.      Factual Background

The following facts are summarized from the record of Petitioner's trial.

On the evening of December 15, 2002, Police Officer Mark Crook ("Crook"), a member of the New York Police Department's Public Service Area 6, Street Narcotic Enforcement Unit ("SNEU"), was acting as the observing officer in an "observation buy and bust" operation.  (*See* Transcript of trial, dated Apr. 28, 2004, May 4-5, 2004 ("Trial Tr."), at 306-10.)  Crook and his team were working in the vicinity of the Douglas Housing Development, near West 104th Street and Columbus Avenue, in Manhattan.  (*Id.* at 309-10.)  At approximately 10:00 p.m., Crook,

---

[2] When the Petition was transferred here from the Western District of New York, where it was initially filed, it was not assigned a docket number in this Court.

[3] Although the Petition identifies Respondent as James Morrissey, it is the Court's understanding that Morrissey is no longer the superintendent of the Butler Correctional Facility and that David Stallone is the current superintendent.

who was located on the rooftop of 850 Columbus Avenue, directly opposite 875 Columbus

Avenue, was scanning the area through a pair of binoculars.  (*Id.* at 310-11, 346.)  The SNEU

was focused on that particular area because the police had received complaints about narcotics

sales there.  (*Id.* at 312.)  During the course of his surveillance, Crook observed an individual,

later identified as Petitioner, wearing a light brown knit hat and a brown jacket with stripes on

the sleeves, standing in front of 875 Columbus Avenue.  (*See id.*)  Crook then saw a second

individual, later identified as "Nurota," wearing a bright fluorescent orange knit hat, brown

jacket and green pants, approach the west corner of West 103rd Street and Columbus Avenue.

(*Id.* at 313.)  Crook turned his attention back to the front of 875 Columbus Avenue and saw

Petitioner wave Nurota over to him.  (*Id.*)  Nurota walked over to Petitioner, at which time Crook

observed Nurota hand over an unknown amount of U.S. currency to Petitioner, while Petitioner,

in exchange, handed Nurota a small object.  (*Id.* at 314.)

Nurota proceeded to West 103rd Street and Manhattan Avenue (*id.* at 316), and Crook

radioed his team to tell them what had happened and to provide a description of Nurota (*id.*).

Approximately two minutes later, Crook observed Nurota make a left turn, proceed northbound

on Manhattan Avenue, and then make another left turn.  (*Id.* at 316-17.)  Once Crook had relayed

this information to his team, he looked back to 875 Columbus Avenue, where he observed

Petitioner enter the building.  (*Id.* at 317.)  Meanwhile, Sergeant Fernando Valerio ("Valerio")

stopped Nurota, placed him under arrest, and recovered from him two small zip lock bags

containing crack cocaine.  (*Id.* at 403.)

Approximately 15 minutes later, Petitioner exited the building (*id.* at 318) and walked

north on Columbus Avenue to West 104th Street (*id.* at 319-20).  Crook transmitted Petitioner's

3

description and direction to his team.  (*Id.* at 320.)  He then observed Valerio walking towards Petitioner.  (*Id.*)  At that point, Crook left his own location and headed towards West 103rd Street and Amsterdam Avenue to confirm the identities of both Petitioner and Nurota.  (*Id.* at 321.)  Valerio encountered Petitioner and saw him appear to throw something to the ground.  (*Id.* at 403-07.)

Petitioner was then taken to the SNEU precinct.  (*See id.* at 332.)  Crook testified he read Petitioner his Miranda rights (*id.* at 333) and that Petitioner indicated that he was willing to answer questions (*id.* at 335).  Petitioner told Crook that he was a user of narcotics, that he was in a rehabilitation program, and that he was on methadone.  (*Id.* at 336.)  Crook interpreted Petitioner's answers to his questions as indicating that Petitioner had been selling drugs so as to be able to procure drugs for his personal use.  (*Id.* at 336-37.)  Petitioner conceded to Crook that he had had something in his possession on the day of his arrest, but that he had thrown it aside as he approached 104th and Columbus Avenue.  (*See id.* at 337.)

### B.   Procedural History

#### 1.   Denial of Petitioner's Motion to Dismiss the Indictment

During the grand jury proceedings, Crook testified that, prior to Petitioner's exchange with Nurota, Crook had also observed Petitioner receive money from another person – a black male wearing a blue hat, black T-shirt and blue jeans – and that Petitioner had similarly handed that person a small object.  (*See* Pet., Ex. C (Order, Cataldo, J., dated Feb. 24, 2003).)  It was after that transaction that Crook observed Petitioner receive money from, and hand a small package to, Nurota.  (*Id.*)

Petitioner moved to dismiss the indictment on the ground that the prosecution had introduced evidence to the grand jury of an uncharged crime.  (*See id.*)  The trial court denied the motion to dismiss, finding that the grand jury minutes were "factually, legally, and procedurally sufficient" to support the indictment.  (*id.*)  As to the testimony regarding the uncharged drug transaction, the court found that it "was not so extensive as to require dismissal of the indictment," and that "its introduction into the Grand Jury was not so prejudicial as to warrant dismissal," although, "[c]learly, a limiting instruction should have been given."  (*Id.*)

### 2.    *Molineux* Ruling

Before the commencement of Petitioner's trial, the prosecution made an application under *People v Molineux*, 168 N.Y. 264 (1901),[4] for leave to introduce evidence at trial regarding the earlier transaction witnessed by Crook.  (*Id.* at 85.)  The prosecution argued that the earlier exchange "complete[d] the narrative" and explained the circumstances that first drew Crook's attention to Petitioner.  (*Id.*)  The trial judge denied the prosecution's application, stating that "it would be highly prejudicial to allow in . . . what the People believe is a drug transaction" and that he didn't want "to give the hand to hand information."  (*Id.* at 87-88.)   The court held, however, that the prosecution could elicit that Crook saw Petitioner in conversation with another individual and that Crook could "describe the person Petitioner spoke to."  (*Id.* at 88.)

### 3.    Trial and Sentencing

Petitioner' jury trial commenced on May 4, 2004, in the Supreme Court, New York County, with the Honorable John Cataldo, J.S.C., presiding.  (*See generally* Trial Tr.)  At trial,

---

[4] In *Molineux*, the New York Court of Appeals held that there are instances where evidence of uncharged crimes may be used to prove guilt of the charged crime.  *See generally id.*

the prosecution presented the testimony of Crook, who witnessed the exchange between

Petitioner and Nurota (*id.* at 313-16 ) and Valerio, who arrested the two men (*id.* at 403-06).  The

prosecution also called photography expert Laura Badger, who authenticated photographs that

she took from Crook's observation post at 850 Columbus Avenue, replicating the strength of the

binoculars he had used on December 15, 2002 (*see id.* at 286-300), and chemist

Aikara Sivadasan, who testified that the substance recovered from Nurota was cocaine (*see id.* at

387-97).  Petitioner did not testify at trial.

Crook's trial testimony regarding the uncharged crime is of particular relevance to

Petitioner's current habeas claims.  At one point during defense counsel's cross-examination of

Crook (regarding, *inter alia,* Crook's ability to see the transaction between Petitioner and

Nurota), the prosecution inquired as to whether the defense was planning to argue that Petitioner

was a buyer (as opposed to a seller) of narcotics, suggesting that, if the defense were planning to

make such an argument, this would "open the door" to the prosecutor's questioning Crook about

the unapprehended buyer that Crook had observed shortly before the sale at issue in the case.

(*See id.* at 368.)  Defense counsel stated that this was "going to be one of [his] arguments," but

that he did not believe it "opened the door to this line of questioning."  (*Id.*)  The trial court then

allowed the prosecutor to question Crook about the prior transaction.  (*Id.*)

On re-direct examination, Crook testified that, approximately five minutes before the sale

at issue took place, he observed a black male individual approach Petitioner in front of

875 Columbus Avenue; he saw that individual give money to Petitioner; and, in turn, he saw

Petitioner hand to that individual what appeared to be a small object.  (*Id.* at 369-71.)  Crook

further testified that, although he communicated to his team what he had seen and in what

direction the individual was walking, his team did not stop this individual.  (*Id.* at 371-72.)  At the close of Crook's testimony, the trial court instructed the jury that the testimony regarding the prior interaction between Petitioner and the black male individual had been allowed "for the sole purpose of providing [the jury] with information which [it] could evaluate concerning what brought . . . [Crook's] attention . . . to [Petitioner]."  (*Id.* at 382.)  The court further instructed the jury:  "That testimony is no proof whatsoever that [Petitioner] possessed, had the propensity or disposition to commit the crime with which he is charged.  It is not offered for that purpose." (*Id.*)

Defense counsel again argued that he had not "opened the door" to testimony regarding the uncharged crime, but, rather, that he had only asked questions about how Crook "really couldn't see what was happening[,]" such as questions relating to whether "the dollars were covered up, . . . [whether] they were visible, and . . . [whether] the glassines were actually held in the hand by [his] client," which could have led the jury to conclude that Petitioner was the buyer. (*Id.* at 384.)  Defense counsel argued that the court should not have then permitted testimony that showed "propensity" on part of the Petitioner, and moved for a mistrial (*id.* at 384-85).  The court rejected the motion, stating that defense counsel had "opened the door as to the conduct of [Petitioner]," by raising an issue of "whether or not [Petitioner] was the buyer," as well as an issue regarding Crook's ability to observe.  (*Id.* at 385-86.)  The court further stated that "the conduct with a prior individual of the same nature goes to explain, amplify [Petitioner's] conduct" (*id.* at 385), and that it was thus appropriate for the prosecution to "complete the narrative" (*id*).

7

Also relevant to Petitioner's habeas claims is the prosecutor's summation.  During her summation, the prosecutor stated, "[O]ne of counsel's main points [in his summation] was "why if [Petitioner] is a drug user, why is he selling the drugs?  I think that is a pretty clear answer for all of you.  If you don't work, you don't have other sources of income, then [Petitioner] need[ed] to sell drugs in order to buy drugs." (*Id.* at 465.) Defense counsel immediately objected to this statement and asked for a mistrial.  (*Id.* at 465-66.)  The trial court sustained the objection (*id.* at 466), but denied counsel's motion (*see id.* at 473).

The jury found Petitioner guilty of criminal sale of a controlled substance in the third degree.  (*Id.* at 515.)[5]  On May 28, 2004, the court sentenced Petitioner, as a second felony offender, to sentence of five to 10 years imprisonment.  (*See* Steward Decl., at ¶ 1.)

### 4.    Direct Appeal

In September 2005, Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, First Department.  (*See* Steward Decl., Ex. A (Pet. App. Brief).)  On appeal, Petitioner argued that his indictment should have been dismissed because, during the grand jury proceedings, the prosecutor presented inadmissible evidence of an uncharged drug sale and failed to give the grand jury a limiting instruction, thereby allowing the evidence to be considered for all purposes including "propensity," in violation of his state and federal

---

[5] Although this Court has not been provided with a copy of the entire transcript, it appears that the jury reached its verdict after an initial deadlock and the trial court's subsequent delivery of *Allen* charge.  (*See* Declaration of Priscilla Steward in Opposition to Petition for a Writ of Habeas Corpus, dated Nov. 30, 2007 ("Steward Decl.") (Dkt. 8), Ex. A (Petitioner's Brief to the Appellate Division, dated Sept. 2005) ("Pet. App. Brief"), at 9-10 (citing Trial Tr. at 502-08, 509-11, 511-13); *see also Allen v. United States*, 164 U.S. 492 (1896).)

constitutional rights.  (*See id.,* at 10-18.)  Petitioner also argued that the prosecutor's summation

at trial violated his state and federal due process rights to a fair trial.  (*Id.*, at 19.)[6]

The Appellate Division unanimously affirmed Petitioner's conviction and sentence on

May 11, 2006.  (*See* Steward Decl., Ex. C; *see also People v. Reyes*, 814 N.Y.S.2d 159 (1st

Dep't 2006).)  As to the propriety of the grand jury proceedings, the court held:

> The court properly denied defendant's motion to dismiss the
> indictment.  During the grand jury presentation of this observation
> sale case, the prosecutor properly introduced evidence of an
> uncharged exchange between defendant and an unapprehended
> buyer which occurred several minutes before and at the same
> location as the defendant's drug sale with an apprehended buyer.
> The uncharged crime was admissible since it completed the
> narrative and was relevant to the observing officer's ability to
> make a reliable identification (*see e.g. People v.LaFontaine*, 22
> AD2d 235 [2005], *lv denied* 5 NY3d 883 [2005]).  Even assuming
> that the prosecutor should have given a limiting instruction about
> the permitted purposes of this evidence, the defect fell far short of
> impairing the integrity of the grand jury proceeding (*see* CPL
> 210.35[5]); *People v. Darby*, 75 NY2d 449, 455 [1990]).

(*Id*.)  The court also rejected Petitioner's challenge to the prosecutor's summation, holding:

> The court properly exercised its discretion in denying defendant's
> mistrial motion based on a single isolated comment made by the
> prosecutor during the summation.  The comment was not
> particularly prejudicial, and by sustaining defendant's objection
> the court took sufficient curative action (*see People v. Santiago*, 52
> NY2d 865 [1981]).

(*Id.*)

On June 8, 2006, Petitioner's counsel, on Petitioner's behalf, filed a letter with the New

York State Court of Appeals, seeking leave to appeal and enclosing copies of the briefs filed in

---

[6]As to both of these claims, Petitioner relied solely on state-law precedent in the body of
his written arguments, but he cited both the New York and federal constitutions in the "point
headings" in his appellate brief.  (*See* Steward Decl., Ex. A (Pet. App. Brief), at 10-21.)

the Appellate Division.  (*See id.*, Ex. D (Letter to the Hon. Judith S. Kaye from Mitchell J.

Briskey, Esq., dated June 8, 2006 (stating:  "Enclosed are copies of the briefs filed in the

Appellate Division and that Court's order and opinion.  Once a Judge is assigned, we will be

submitting a follow-up letter in support of this application.").)  Petitioner's counsel then

submitted a supplemental letter in support of Petitioner's application, citing only state case law

in support of the same two claims that had been before the Appellate Division.  (*See id.*, Ex. D

(Letter to Hon. Robert S. Smith from Mitchell J. Briskey, Esq., dated July 14, 2006).

Specifically, Petitioner argued that, under New York law, (1) the trial court should have

dismissed Petitioner's indictment because there was a reasonable probability that the grand jury

may have relied on evidence of the uncharged crime as evidence of criminal propensity and no

limiting instruction had been given (*see id.* at 1-7); and (2) the prosecution violated Petitioner's

due process right to a fair trial by arguing during summation that Petitioner's alleged lack of

employment gave rise to a propensity to sell drugs in order to buy drugs (*id.* at 8).  On

August 11, 2006, the New York Court of Appeals denied Petitioner's application for leave to

appeal.  (*See* Steward Decl., Ex. F (Certificate Denying Leave, dated Aug. 7, 2006); *see also*

*People v. Reyes*, 822 N.Y.S.2d 492 (2006).)

### 5.   Federal Habeas Petition

Petitioner filed a federal habeas petition, together with a memorandum of law and application for counsel,[7] on January 30, 2007,[8] in the United States District Court for the Western District of New York.  By that court's Order dated February 16, 2007, Petitioner's case was transferred to this Court.  (*See* Order, Siragusa, J., dated Feb. 16, 2007.)

In his habeas petition, Petitioner raises the following claims:  (1) that the evidence of an uncharged crime was improperly introduced during both the grand jury proceedings and at trial; (2) that the prosecutor's summation denied him a fair trial; and (3) that his appellate counsel was ineffective.  (*See generally* Petition.)

On November 30, 2007, Respondent opposed the petition by filing a Declaration in Opposition to Petition for Writ of Habeas Corpus (Dkt. 8) with exhibits annexed thereto, together with a memorandum of law (Dkt. 9), and the transcript of Petitioner's trial (Dkt. 10).

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition must be filed within a one-year limitations period beginning on the latest of four dates,

---

[7] By separate Order of this date, this Court has denied Petitioner's application for counsel without prejudice.  (*See* Order, dated Apr. 21, 2010.)

[8] Although that Court's docket reflects a filing date of March 27, 2007, a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the court, *see Houston v. Lack*, 487 U.S. 266, 270 (1988), and this Court will therefore deem the Petition to have been filed on January 30, 2007, the date when Petitioner declared under penalty of perjury that he delivered the petition to prison authorities to be mailed to the Court. *See, e.g.*, *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 2000).

usually "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A); *see also Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (citations omitted) (judgment becomes "final" for purposes of Section 2244 upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or – if the prisoner elects not to file a petition for certiorari – [the expiration of] the time to seek direct review via certiorari").[9]

In this case, Petitioner timely filed his habeas petition.  On August 7, 2006, the Court of Appeals denied Petitioner leave to appeal (Steward Decl., Ex F), and Petitioner's conviction became final 90 days later, on November 5, 2006, the date on which his time to seek a writ of certiorari to the Supreme Court expired, *see Williams*, 237 F.3d at 150-51.  Petitioner filed his habeas petition on January 30, 2007, well within one year from that date.

### B.   Exhaustion

A federal court may not consider a petition for a writ of habeas corpus unless the petitioner has exhausted all state judicial remedies.  28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Doresy v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997).  To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those

---

[9] The limitations period may alternatively begin to run on the following dates:  (1) where the petitioner was prevented from filing an application by state action, the date on which the impediment is removed; (2) where the right asserted is a newly recognized one made retroactively applicable, the date on which the constitutional right asserted was initially recognized by the Supreme Court; and (3) the date on which the factual predicate of the claim presented could have been discovered through the exercise of due diligence.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).

courts the "'opportunity to pass upon and correct alleged violations of . . . prisoners' federal rights." *Picard*, 404 U.S. at 275 (citing *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)). There are several ways by which a petitioner can fairly present a federal claim to the state appellate court, including by citing the relevant provisions of the federal Constitution in his appellate brief. *See Davis v. Strack*, 270 F.3d 111, 122 (2d Cir. 2001). Once the state courts are appraised of the constitutional nature of a petitioner's claims, the exhaustion requirement is fulfilled when those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citation omitted).

### C.      **Standard of Review**

Where a federal constitutional claim has been adjudicated on the merits by the state court, this Court must accord substantial deference to the state court's decision under the standard of review dictated by AEDPA. *See* 28 U.S.C. § 2254(d); *see also Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground"). The relevant section of AEDPA provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In addition, under AEDPA, where not manifestly unreasonable, a state

court's factual findings are presumed correct, and can only be overcome by "clear and

convincing evidence."  28 U.S.C. § 2254(e)(1).

Under AEDPA, a state court decision is "contrary to" clearly established federal law

where the state court either applies a rule that "contradicts the governing law" set forth in

Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a

[Supreme Court] decision" and arrives at a different result.[10]  *Williams*, 529 U.S. at 405-06.  An

"unreasonable application" of clearly established federal law occurs when the state court

identifies the correct governing legal principle, but unreasonably applies that principle to "a set

of facts different from those of the case in which the principle was announced."  *Lockyer v.

Andrade*, 538 U.S. 63, 73-76 (2003).  The state court's decision, however, "must have been more

than incorrect or erroneous" –  rather, "[t]he state court's application must have been

'objectively unreasonable.'"  *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting *Williams*,

529 U.S. at 409).

Where the state court has not reached the merits of a petitioner's claim, then this Court

will consider the claim under a de novo standard of review.

_____

[10] The Supreme Court has emphasized that "clearly established Federal law" refers only
to the "'holdings, as opposed to the dicta, [of the Supreme Court's] decisions as of the time of
the relevant state-court decision.'"  *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting
*Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also Rodriguez v. Miller*, 537 F.3d 102,
106-07 (2d Cir. 2007) ("*Musladin* admonishes courts to read the Supreme Court's holdings
narrowly and to disregard as dicta for habeas purposes" much of the underlying logic and
rationale of the high court's decisions.).  Thus, a principle of constitutional law "grounded solely
in the holdings of the various courts of appeals or even in the dicta of the Supreme Court" cannot
provide the basis for habeas relief.  *Id.* (citing *Musladin*).

II.       **THE PETITION SHOULD BE DISMISSED.**

    A.       **As Petitioner Has Presented a "Mixed Petition,"
and As a Stay of These Proceedings Would Not Be
Appropriate, the Entire Petition Should Be Dismissed.**

In this case, Petitioner has not exhausted all of his claims in the state courts.  He did raise

two of his claims on his direct appeal (his claims challenging the conduct of the grand jury

proceedings and the prosecutor's conduct on summation), referencing the federal Constitution in

both instances in his brief to the Appellate Division.  (*See supra,* n.6.)  Further, his initial letter

seeking leave to appeal, which simply enclosed a copy of his appellate brief, was sufficient to

place those claims before the New York Court of Appeals, and thereby exhaust them for

purposes of federal habeas review.  *See Galdamez v. Keane,* 394 F.3d 68, 75-77 (2d Cir. 2005)

(holding that federal habeas claims raised were properly exhausted by counsel's letter to the New

York Court of Appeals simply enclosing appellate briefs for review).[11]  While Petitioner did not

similarly raise on direct appeal his additional claim that the trial court violated his due process

rights by admitting evidence of an uncharged crime at trial, that claim may be "deemed"

exhausted for purposes of habeas review, as Petitioner would no longer have an avenue available

to him in the state courts, to exhaust this claim.  (*See* discussion *infra,* at 21-24.)

Petitioner's final claim, however, challenging the effectiveness of the assistance he

received from his appellate counsel, is unexhausted, and may not be deemed exhausted by this

Court.  Petitioner never raised this claim before the state courts, but he would still be able to

---

[11] The fact that counsel's supplemental letter to the Court of Appeals then argued
Petitioner's claims only in terms of state law should not be construed as an abandonment of
Petitioner's federal claims.  *See Morgan v. Bennett,* 204 F.3d 360, 370 (2d Cir. 2000); *Bumpus v.
Warden,* No. 97-CV-1791 (ENV), 2010 U.S. Dist. LEXIS 33879, at *2-3 (E.D.N.Y. Apr. 6,
2010.)

exhaust the claim through a petition for a state writ of error *coram nobis*. *See People v. Bachert*, 69 N.Y. 2d 593 (1987); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").

Petitioner's petition is thus a "mixed petition," in that it contains both exhausted claims and one claim that remains unexhausted. *See Rhines v. Weber*, 544 U.S. 269 (2005). When ruling on a mixed petition, the Court may dismiss the entire petition, or, in its discretion, may stay the proceedings and hold the petition in abeyance, so as to permit the petitioner to return to the state courts to exhaust any unexhausted claims, assuming an avenue for exhaustion is still available. *See id.* at 277-78. If, however, the petitioner has not shown good cause for his failure to exhaust any unexhausted claims, or if those claims are plainly meritless, then the issuance of a stay would be an abuse of the Court's discretion. *See id.* at 277. Where a court "determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id.* at 278. Under AEDPA, the Court may also dismiss an unexhausted claim on the merits. *See* 28 U.S.C. § 2254(b)(2); *see also, e.g., Aparicio v. Artuz*, 269 F.3d 78, 91 n.5 (2d Cir. 2001).

Although Petitioner asks the Court to disregard his failure of exhaustion, there are only two grounds upon which exhaustion may be excused: (1) if "there is an absence of available State corrective process," or (2) if "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The first has no bearing here,

given the availability of state *coram nobis*, and, as to the second, Petitioner has not adequately demonstrated circumstances that would render a *coram nobis* proceeding "ineffective" in his case.  In this regard, Petitioner argues only that, without the assistance of the person who helped him prepare his habeas submissions, he would lack the "[t]ime, resources and talent" to allow him to prepare a "meaningful [*coram nobis*] motion" (Petitioner's Memorandum of Law in Support of his Motion for a Writ of Habeas Corpus sworn to Jan. 30, 2007 ("Pet. Mem.") at 7 ("[I]f this Court . . . mak[es] me go to the Appellate Court with a Coram Nobis motion, I will most likely not have the assistance I had in preparing that set of papers that I did in preparing this one.  I was blessed to get the much needed assistance I received here, but I can not, for the reasons stated[,] expect to receive more help in the fu[]ture."))  Yet, with the assistance he did receive on his habeas petition, Petitioner was able to articulate his ineffective assistance claim, and he has not demonstrated any reason why he could not have then raised the exact same claim in state court.  Surely, he has not shown that his circumstances are such that the state process that is clearly available to him would be "ineffective" to protect his rights.[12]

If Petitioner's ineffective assistance claim were meritless on its face, this Court would recommend, despite Petitioner's failure to exhaust the claim, that the Court proceed to consider the claim and dismiss it on its merits, pursuant to 28 U.S.S. § 2254(b)(2).  This particular claim, however, would require a lengthy analysis, in that Petitioner identifies a significant number of

---

[12] Petitioner's further suggestion that he is actually innocent and that the Court's failure to consider his claim would thus "result in a miscarriage of justice" (Pet. Mem., at 7) is also not sufficient to excuse the exhaustion requirement.  Even assuming that the Court could consider such an argument in the face of the comity principles that drive the exhaustion doctrine, a petitioner's mere assertion of "actual innocence," without new reliable evidence to support such an assertion, is, as noted above, inadequate to open the gate to this Court's consideration of a defaulted claim.  (*See* discussion *infra*, at 24.)

state and federal claims that, he contends, his appellate counsel should have raised on appeal. (*See* Pet. at 8(a)-8(m).)  In addition, one of the underlying claims identified by Petitioner is a claim for ineffective assistance of *trial* counsel, which introduces another level of complexity, as Petitioner recites a litany of ways in which his trial counsel allegedly gave him inadequate representation during proceedings before the trial court – each of which, he argues, should have been raised on appeal by his appellate counsel.  (*Id.* at 8(e)-8(m).)

"[T]he interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims."  *Rhines*, 544 U.S. at 273 (citing *Rose v. Lundy,* 455 U.S. 509, 518-19 (1982)).  As Petitioner's ineffective assistance claim has multiple parts and sub-parts, each of which would require separate analysis, and as the claim is therefore not readily resolved on the merits, this Court should not reach out to decide the merits of that claim, prior to any review by the state courts.

Under these circumstances, the Court is left with limited options.  As Petitioner has not shown, and apparently cannot show, good cause for his failure to exhaust his ineffective assistance claim, it would be an abuse of discretion for this Court to stay these proceedings to enable Petitioner to exhaust the claim at this juncture.  *See Rhines,* 544 U.S. at 277 ("Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.").  Moreover, Petitioner has not sought a *Rhines* stay; on the contrary, he has specifically urged this Court *not* to grant one.  (*See* Pet. Mem. at 7 (arguing that, in the interest of justice, the Court should not stay these

proceedings, as Petitioner would lack the assistance he would need to proceed with a state-court motion).)

As staying these proceedings would thus be inappropriate, the only remaining option for the Court is to dismiss the entire petition without prejudice, although, as noted above, the Court should first afford Petitioner the opportunity to amend his Petition to excise the unexhausted claim, so that the Court could proceed to decide his exhausted claims.  On the assumption that Petitioner would prefer the Court to consider the majority of his claims, rather than dismiss the entire Petition outright and risk being barred from raising any of those claims again in federal court,[13] this Court will proceed to consider the remainder of the claims.  S*ee Taylor v. Poole,* No. 07 Civ. 6318 (RJH) (GWG), 2009 U.S. Dist. LEXIS 76316, at *74, n.11 (Aug. 29, 2009) (Report and Recommendation) (where *Rhines* stay would be inappropriate, presuming that petitioner would prefer the Court to analyze the exhausted claims, but noting that petitioner should inform the Court if he preferred to have the entire petition dismissed as a mixed petition).  As can be seen from the analysis below, however, none of these other claims have merit and thus, either way, the Petition should be dismissed.

---

[13] Even if Petitioner's exhausted claims were dismissed "without prejudice," he would likely be unable to return to this Court thereafter, as the applicable statute of limitations would presumably run, *see Duncan v. Walker,* 533 U.S. 167, 181 (2001) (holding that the pendency of a federal habeas action does not toll the statute of limitations), and because Petitioner is no longer in custody, and thus could not commence a new habeas proceeding, *see* 28 U.S.C. § 2241(c).

**B.      Even if the Petition Were Amended to Delete the
          Unexhausted Claim, the Petition Should be Dismissed.**

### 1.      Claims Regarding Introduction of Evidence of an Uncharged Crime

Petitioner argues that his Fifth and 14th Amendment rights were violated by the

introduction of evidence of an uncharged crime both (a) during the grand jury proceedings and

(b) at trial.  (*See* Pet., at 7(a)-(b).)  As to the first of these two claims, Respondent argues that any

claim regarding the conduct of state grand jury proceedings is not cognizable on federal habeas

review.  (*See* Resp. Mem., at 12-13.)  As to the second of these claims, Respondent argues that

Petitioner failed to exhaust his challenge to the admission of evidence at trial, and that the claim

(which may be deemed exhausted) is now procedurally barred and, in any event, without merit.

(*Id.* at 14-17.)

### a.      Introduction of the Evidence During Grand Jury Proceedings

Respondent is correct that claims of deficiencies in state grand jury proceedings are not

generally cognizable in a habeas proceeding in federal court.  *See Lopez v. Riley*, 865 F.2d 30, 32

(2d Cir. 1989) (affirming district court denial of writ on grounds that petitioner's challenges to

state grand jury proceedings are not cognizable in a habeas proceeding (citing *United States v.

Mechanik*, 475 U.S. 66, 70 (1986))).  Moreover, a subsequent guilty verdict "means not only that

there was probable cause to believe that the defendants were guilty as charged, but also that they

are in fact guilty as charged beyond a reasonable doubt.  Measured by the petit jury's verdict,

then, any error in the grand jury proceeding connected with the charging decision was harmless

beyond a reasonable doubt."  *Mechanik*, 475 U.S. at 70; *see Lopez*, 865 F.2d at 33; *Chacko v.

United States*, No. 96 Cr. 519 (JGK), No. 04 Civ. 2258 (JGK), 2005 U.S. Dist. LEXIS 11380, at

*16 (S.D.N.Y. June 8, 2005) (holding that an error in a grand jury proceeding, "is generally

considered harmless once a defendant has been convicted at trial after a jury has found that defendant guilty of crimes charged in the indictment beyond a reasonable doubt").

This reasoning has specifically been held to extend to cases where the alleged grand jury error related to the introduction of evidence of uncharged crimes. *See Ocean v. Cunningham*, No. 02 Civ. 6357 (JBW), 2003 U.S. Dist. LEXIS 24132, at *34 (dismissing habeas claim on the ground that the introduction of medical records containing evidence of uncharged crimes during grand jury proceedings does not implicate a federal issue); *Battle v. Donnelly*, No. 00 Civ. 6203 (DAB) (JCF), 2002 U.S. Dist. LEXIS 4946, at *33 (S.D.N.Y. Mar. 22, 2002) (Report & Recommendation) (recommending dismissal of petitioner's habeas claim challenging prosecutor's introduction of evidence to a grand jury regarding a prior disciplinary infraction committed by petitioner while in state prison), *adopted by*, Order, dated Dec. 20, 2002 (DAB); *Mariani v. Kelly*, No. 97 Civ. 384 (FJS)(GLS ), 2001 U.S. Dist. LEXIS 23760, at *17-19 (N.D.N.Y. Jan. 17, 2001) (Report & Recommendation) (recommending dismissal of alleged improper introduction of uncharged crime during grand jury proceedings as not cognizable on federal habeas review), *adopted by*, 2001 U.S. Dist. LEXIS 25935 (N.D.N.Y. Sept. 27, 2001).

Accordingly, I recommend the dismissal of Petitioner's claim that his rights were violated by the conduct of the grand jury proceedings in his case.

### b.  Admission of the Evidence at Trial

Respondent is also correct that Petitioner cannot prevail on his claim that the trial court committed constitutional error by admitting evidence of an uncharged crime at trial. This claim is procedurally barred from review by this Court, and, even if Petitioner could overcome the procedural bar, the claim would be subject to dismissal on the merits.

i.      **Petitioner's Claim Is Unexhausted and**
        **Procedurally Barred, and Petitioner**
        **Cannot Overcome the Procedural Bar.**

There is no evidence in the record that Petitioner ever raised, before any state appellate

court, his claim regarding the trial court's allegedly improper introduction of evidence at trial.

Petitioner has thus failed to demonstrate that he has exhausted this claim.  *See Bossett*, 41 F.3d at

828.  Nonetheless, Petitioner's may be deemed exhausted, as Petitioner no longer has an

available remedy in state court.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Aparicio v.*

*Artuz*, 269 F.3d 78, 91 (2d Cir. 2003); *Bossett,* 41 F.3d at 828-29 (citations omitted); *Grey v.*

*Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991) (citations omitted).[14]

When, however, a claim is deemed exhausted because of a procedural bar, "the

procedural bar that gives rise to exhaustion provides an independent and adequate state-law

ground for the conviction and sentence, and thus prevents federal habeas corpus review of the

defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default,"

*Gray v. Netherland*, 518 U.S. 152, 162 (1996) (citations omitted); *accord Carmona v. United*

*States Bureau of Prisons*, 243 F.3d 629, 633 (2d Cir. 2001) (citations omitted), or that "failure to

---

[14] Petitioner used his one opportunity for direct appeal, and thus any further direct appeal is foreclosed.  *See* N.Y. Court Rules § 500.20(a) (permitting only one application for leave to appeal); *see also* N.Y. Crim. Proc. Law §§ 450.10 & 450.15 (allowing a petitioner one chance to appeal).  Further, because Petitioner's claim relates to an evidentiary ruling by the trial court, and such a ruling could have been raised on direct appeal, Petitioner cannot assert the claim collaterally.  *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (barring collateral review of claims that could have been raised on direct appeal).  Petitioner also cannot seek review of the claim pursuant to either a writ of error *coram nobis*, *see People v. Gordon*, 584 N.Y.S.2d 318 (2d Dep't 1992) (*coram nobis* relief only available for claims of ineffective assistance of appellate counsel) (citation omitted), or a state writ of habeas corpus, *see People ex rel. Allah v. Leonardo*, 565 N.Y.S.2d 331 (3d Dep't 1991) (state writ of habeas corpus unavailable where claim could have been raised on direct appeal) (citations omitted).

consider the [defaulted] claim will result in a fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (internal quotation marks and citations omitted).

"Cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Ayuso v. Artuz*, No. 99 Civ. 12015 (AGS) (JCF), 2001 U.S. Dist. LEXIS 2504, at *23 (S.D.N.Y. Mar. 7, 2001); *Williams v. Artus*, 08 Civ 11356 (JGK), 2010 U.S. Dist. LEXIS 21105, at *17 (S.D.N.Y. Mar. 5, 2010). Thus, cause for a default exists where a petitioner can show that (1) "the factual or legal basis for a claim was not reasonably available to counsel," (2) "'some interference by state officials' made compliance [with the procedural rule] impracticable," or (3) "the procedural default is the result of ineffective assistance of counsel." *Bossett*, 41 F.3d at 829 (citation omitted). "Prejudice" requires Petitioner to demonstrate that the alleged constitutional error worked to Petitioner's "*actual* and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *accord Femia v. United States*, 47 F.3d 519, 524 (2d Cir. 1995). Here, Petitioner has not even attempted to show any cause for his procedural default. Therefore, this Court need not reach the question of whether Petitioner can show prejudice. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice.").

Nor has Petitioner demonstrated "a sufficient probability that [the] failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter*,

529 U.S. 446, 451 (2000) (citing *Coleman*, 501 U.S. at 750). This exception to the procedural

bar is extremely narrow; it is "concerned with actual as compared to legal innocence." *Sawyer v.*

*Whitley*, 505 U.S. 333, 339 (1992). Further, actual innocence means "'factual innocence, not

mere legal insufficiency.'" *Rosario v. United States*, 164 F.3d 729, 733 (2d Cir. 1998) (internal

citation omitted). To show "actual innocence," Petitioner must produce new, reliable evidence

sufficient to make a "colorable showing" that "it is more likely than not that no 'reasonable

juror' would have convicted [Petitioner]" in light of the new evidence. *Schlup v. Delo*, 513 U.S.

298, 329 (1995); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000).

Although, at one point in his memorandum, Petitioner appears to assert that he is "actually

innocent" (*see* Pet. Mem. at 7), he has offered no new evidence to support this assertion. Thus,

he has not made an adequate showing to satisfy the "miscarriage of justice" exception to the

procedural bar.

Accordingly, this Court is procedurally barred from reviewing Petitioner's claim

regarding the admission of evidence of an uncharged crime at trial, and this claim must be

dismissed.

**b.      In Any Event, This Claim Is Meritless.**

Even if Petitioner could show a basis for overcoming the procedural bar, his claim

challenging the trial court's evidentiary ruling in admitting evidence of an uncharged crime

would fail on the merits, under a *de novo* standard of review.

As a general rule, state evidentiary rulings do not implicate federal law and are therefore

not reviewable by federal courts. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (stating "it is

not the province of a federal habeas court to reexamine state-court determinations on state-law

questions"); *Ortiz v. N.Y. State Parole in Bronx, N.Y.*, 586 F.3d 149, 157 (2d Cir. 2009); *Roberts v. Scully*, 875 F. Supp. 182, 189 (S.D.N.Y. 1993) ("[R]ulings by the state trial court on evidentiary questions are a matter of state law and pose no constitutional issue."), *aff'd*, 71 F.3d 406 (2d Cir. 1995).  This court may review a state evidentiary ruling in a habeas proceeding only if the petitioner can show that the ruling "deprived him of a *fundamentally fair trial*."  *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988) (emphasis in original) (internal citation omitted); *see also Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) ("The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990))).  A habeas petitioner "must demonstrate that the alleged evidentiary error violated an identifiable constitutional right, and, in doing so, a petitioner bears a heavy burden because evidentiary errors generally do not rise to constitutional magnitude."  *Copes v. Schriver*, No. 97 Civ. 2284 (JGK), 1997 U.S. Dist. LEXIS 16349, at *8 (S.D.N.Y. Oct. 22, 1997) (citation omitted).

   In this case, Petitioner's claim that the trial court improperly permitted the prosecution to present testimony concerning an uncharged crime must fail, as the state court's evidentiary ruling was not even erroneous.  Under New York law, "a trial court may admit into evidence uncharged crimes when the evidence is relevant to a pertinent issue in the case other than a defendant's criminal propensity to commit the crime charged."  *People v. Till*, 87 N.Y.2d 835, 836 (1995); *see Molineux*, 168 N.Y. at 293.  One legitimate reason for the introduction of such evidence is "to complete the narrative of events regarding the commission of the crime."  *See People v. Wright*, 733 N.Y.S.2d 225, 226 (2d Dep't 2001) (citations omitted); *see also Brown v.*

*Walsh*, 04 Civ. 5756 (PAC) (MHD), 2006 U.S. Dist. LEXIS 64877, at *12 (S.D.N.Y. July 21,

2006) (Report & Recommendation) (recommending that the district court uphold the state trial

court's admission of testimony on uncharged crime to complete the narrative of events leading to

detective's purchase of drugs from petitioner), *adopted by,* 2006 U.S. Dist. LEXIS 62037

(S.D.N.Y. Aug. 31, 2006).  Where the evidence "completes the narrative," the trial court may

admit it "in [the court's] discretion if its probative value outweighs the potential for prejudice,

provided that the court gives a proper limiting instruction to the jury."  *Wright*, 733 N.Y.S.2d at

226; *see also People v. Alvino*, 71 N.Y.2d 233, 242 (1987).

        Here, it was appropriate for the trial court to permit Crook to testify as to what he

observed prior to the transaction at issue, to the extent that testimony explained why Crook

initially focused his attention on Petitioner.  *See Urena v. Lape*, 373 F. Supp. 2d 449, 454-56

(S.D.N.Y. 2005) (upholding state court's inclusion of evidence of uncharged crime at trial to

explain why the police focused their attention on the petitioner).  Petitioner does not seem to

question that this testimony served to complete Office Crook's narrative, arguing instead that the

probative value of the testimony was outweighed by its prejudicial nature.  (*See* Pet. Mem., at

3-5.)  Petitioner also suggests that this testimony likely had an undue impact on the jury's

deliberations, as purportedly evidenced by the fact that the jury initially had difficulty reaching a

verdict.  (*See id.*; *see also supra*, at n.5.)  It appears, however, that the trial court appropriately

considered the potentially prejudicial effect of Crook's testimony, as the Court admitted the

evidence only for the narrow purpose of completing Crook's narrative and carefully instructed

the jury in that regard.  (*See supra,* at 6-7; Trial Tr. at 382-83.)

As this Court may presume that the jury followed the trial court's limiting instruction, *see Herring v. Meachum*, 11 F.3d 374, 378 (2d Cir. 1993) (citing *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987)), the court's evidentiary ruling in this case cannot fairly be seen as having had a "substantial and injurious effect or influence" on the jury, *Dunnigan*, 137 F.3d at 130; *see also Flowers v. Ercole*, No. 06 Civ. 6118 (LTS) (FM), 2008 U.S. Dist. LEXIS 109987, at *30-31 (S.D.N.Y. Nov. 25, 2008) (Report & Recommendation) (recommending denial of habeas relief where trial court instructed the jury that the similar act evidence could be considered for limited purposes and not as evidence of propensity to engage in criminal activity), *adopted by*, 2008 U.S. Dist. LEXIS 85401 (S.D.N.Y. Sept. 18, 2009); *Kanani v. Phillips*, No. 03 Civ. 2534 (PKC) (AJP), 2004 U.S. Dist. LEXIS 20444, at *67 (S.D.N.Y. Oct. 13, 2004) (Report & Recommendation) (finding no unfairness where trial judge gave a specific limiting charge to the jury to ensure jurors considered evidence of uncharged crimes for only for appropriate purposes), *adopted by*, 2005 U.S. Dist. LEXIS 22417 (S.D.N.Y. Oct. 3, 2005).

Moreover, where an opposing party "'opens the door' on cross examination to matters not touched upon during the direct examination, a party has the right on redirect 'to explain, clarify, and fully elicit [the] question only partially examined' on cross-examination." *People v. Melendez*, 55 N.Y.2d 445, 451 (1982) (internal citation omitted); *see also People v. Marrero*, 548 N.Y.S.2d 188, 189 (1st Dep't 1989). Based on the record presented in this case, the trial court did not err in finding that Petitioner's counsel had "opened the door" to allowing the testimony in question. (*See* Trial Tr. at 385-86.) In his cross-examination of Crook, counsel raised questions regarding Crook's ability to observe Petitioner's role in the Nurota transaction, suggesting that Petitioner may have been the buyer, rather than the seller, in that transaction.

27

(*See id.*)  Under these circumstances, it would have been appropriate for the trial court to permit the jury to consider Crook's testimony regarding other events he had seen on that day that would tend to confirm the nature of Petitioner's role as a seller.  The fact that the trial court nonetheless instructed the jury that it should not consider the evidence as proof of any propensity by Petitioner to commit the charged crime (*see id.,* at 382-83) only demonstrates that the court acted in a manner that was protective of Petitioner's rights.

Overall, Petitioner has not demonstrated that the trial court's limited admission of evidence of an uncharged crime, in the circumstances presented, was error, much less error that so substantially affected the conduct of the trial as to render it fundamentally unfair. Accordingly, this claim should be dismissed as procedurally barred and, in any event, without merit.

### 2.   Prosecutorial Misconduct in Summation

Petitioner's claim challenging the conduct of the grand jury proceedings, which Petitioner exhausted through his direct appeal (*see supra,* at 8-10), was decided by the Appellate Division on the merits, and thus should be reviewed by this Court under the deferential standard of review set forth in AEDPA.[15]

A prosecutor is properly given wide latitude in summation, *People v. Galloway*, 54 N.Y.2d 396, 399-400 (1981), and is entitled to comment upon evidence presented at trial and to

---

[15] Although the Appellate Division did not refer to federal law in adjudicating Petitioner's claim, a state court may decide a fairly presented claim "'on the merits' even if it does not discuss the claim or reference federal law."  *Makenzie v. Marshal*, No. 07 Civ. 4559 (SJF), 2009 U.S. Dist. LEXIS 104119, at *5-6 n.1 (E.D.N.Y. Nov. 5, 2009) (citing *Sellan*, 261 F.3d at 311-312).

urge the jury to draw reasonable inferences from that evidence, *United States v. Roldan-Zapata*, 916 F.2d 795, 807 (2d Cir. 1990) ("In summation[,] counsel are free to make arguments which may be reasonably inferred from the evidence presented." (citations omitted)), *cert. denied*, 499 U.S. 940 (1991).  Further, even where a prosecutor has made improper comments in summation, habeas relief is not warranted merely because those comments "were undesirable or even universally condemned." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (citation and internal quotation marks omitted); *see also United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999). Again, the question for this Court is whether undesirable remarks rendered the trial, as a whole, "fundamentally unfair."  *See Darden*, 477 U.S. at 182.

Specifically, to be entitled to habeas relief, a petitioner must show "that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict."  *Bentley v. Scully*, 41 F.3d 818, 823 (2d Cir. 1994) (citations and internal quotation marks omitted).  In determining whether the prosecutor's remarks caused the petitioner actual prejudice, the Court should consider "'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.'"  *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir.1998) (internal citations omitted); *accord United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002).  In addition, "In order to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo."  *United States v. Young*, 470 U.S. 1, 12 (1985) (stating defense counsel's conduct as well as prosecutor's response is relevant).  "Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction

obtained in an otherwise fair proceeding.'" *Id.* at 11-12.

Petitioner argues that the prosecutor's comment suggesting that Petitioner needed to sell drugs, in order to have the money to buy drugs, was improper. (*See* Trial Tr. at 465; Pet. Mem., at 6.) According to Petitioner, the remark was unduly prejudicial, and, in his view, "in a close case such as [his], more careful scrutiny should be given to . . . [alleged] events of prosecutorial misconduct." (Pet. Mem., at 6.) Petitioner further argues that the mere fact that trial court sustained defense counsel's objection to the prosecutor's statement was insufficient to cure the prejudicial effects of the purported misconduct, and that he thus suffered a deprivation of his constitutional rights. (*See id.*) Petitioner, however, has not demonstrated that the Appellate Division's rejection of this claim (*see* Steward Decl., Ex. C (finding that the prosecutor's "single isolated comment . . . was not particularly prejudicial")) was contrary to, or an unreasonable application of, clearly established federal law, as would be required under AEDPA, *see* 28 U.S.C. § 2254(d)(1).

First, a review of the trial transcript indicates that the prosecutor's comment was made in direct response to an argument made by defense counsel in his own summation. In summation, defense counsel had posed the rhetorical question: "[W]hy would Petitioner sell drugs for more drugs[?]," adding that, "[i]f he is a user, if he has [it], selling it is risky. It doesn't make sense." (Trial Tr. at 461-62.) The prosecutor then answered that question by stating: "[O]ne of counsel's main points was "why if [Petitioner] is a drug user, why is he selling the drugs? I think that is a pretty clear answer for all of you. If you don't work, you don't have other sources of income, then [Petitioner] need[ed] to sell drugs in order to buy drugs." (*Id.* at 465.) Thus, viewed in context, rather than in isolation, the prosecutor's remark was not improper. *See Urena*,

373 F. Supp. 2d at 456 (finding prosecutor's summation was a proper response to defense counsel's assertions made during summation).  Certainly, even if the prosecutor did engage in improper conduct, that conduct could not be characterized as egregious.

In addition, the fact that the trial court sustained defense counsel's objection to the remark (*see* Trial Tr. at 465-66) reduced any prejudice that the remark may have caused, *see Barclay v. Spitzer*, No. 02 Civ. 02184 (JBW), 2003 U.S. Dist. LEXIS 26440, at *42 (E.D.N.Y. Sept. 17, 2003) (finding "defendant's claim that he was denied a fair trial because of a single comment by the prosecutor on summation, to which an objection was sustained, and for which no other curative relief was requested, fails to provide a basis for habeas relief").  Finally, Petitioner has not shown that his conviction was uncertain, but for the prosecutor's single remark.  While Petitioner argues that prejudice, in this case, may be demonstrated by the jury's apparent difficulty in reaching a verdict (*see* Pet. at 8(a)), the evidence of Petitioner's guilt was strong, if not overwhelming.  At bottom, Crook provided eyewitness testimony of an apparent drug by Petitioner to Nurota, from whom Valerio then recovered cocaine.

In light of this evidence of Petitioner's guilt and the isolated – and responsive – nature of the prosecutor's comment during summation, I recommend that the Petitioner's prosecutorial misconduct claim be dismissed.

## CONCLUSION

For the foregoing reasons, I recommend that the Petition be deemed amended to excise Petitioner's unexhausted claim of ineffective assistance of appellate counsel and that the Petition be dismissed in its entirety, with prejudice.

Further, I recommend that the Court decline to issue a certificate of appealability

pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Loretta A. Preska, United States Courthouse, 500 Pearl Street, Room 1320, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Preska. FAILURE TO FILE OBJECTIONS WITHIN 14 DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Hermann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
       April 21, 2010

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

Honorable Loretta A. Preska, U.S.D.J.

Mr. Jose Reyes, *pro se*
29 Warren Street
Apt. 6N
Staten Island, NY 10304

Priscilla Steward, Esq.
Alyson Gill, Esq.
New York State Office of the Attorney General
120 Broadway
New York, NY 10271